David R. Wright (UT Bar No. 05164)
  *dwright@mabr.com*
Sterling A. Brennan (UT Bar No. 10060)
  *sbrennan@mabr.com*
Kirk R. Harris (UT Bar No. 10221)
  *kharris@mabr.com*
Michael A. Manookin (UT Bar No. 15667)
  *mmanookin@mabr.com*
MASCHOFF BRENNAN GILMORE ISRAELSEN & WRIGHT, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361

Attorneys for Plaintiff VIVINT, INC.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC., <br> a Utah corporation, <br><br>         Plaintiff, <br><br> v. <br><br><br> ADT, LLC OF DELAWARE d/b/a <br> ADT Security Services, a Delaware <br> limited liability company, <br><br>         Defendant. | Civil No. 2:21-cv-00115-CMR <br><br> **COMPLAINT FOR** <br> **PATENT INFRINGEMENT** <br><br><br> JURY DEMANDED <br><br> District Judge Cecilia M. Romero |

1

Plaintiff Vivint, Inc. ("Vivint"), by and through its undersigned counsel, Maschoff Brennan Gilmore Israelsen & Wright, PLLC, hereby complains against defendant ADT, LLC of Delaware d/b/a ADT Security Services ("ADT"), and in support thereof alleges as follows:

## THE PARTIES

1.      Vivint is a corporation duly organized and existing under the laws of the state of Utah, with its principal place of business at 4931 North 300 West, Provo, Utah 84604.

2.      ADT is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.

3.      ADT is registered in Utah as doing business as "ADT Security Services."

4.      ADT has a regular and established place of business in Utah located at 1279 West 2200 South, Suite B, West Valley City, Utah 84119 (the "ADT Office").

## JURISDICTION AND VENUE

5.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., including, but not limited to, 35 U.S.C. §§ 271, 281, 284, and 285.

6.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      ADT is subject to this Court's exercise of specific and general personal jurisdiction pursuant to the Due Process Clause of the Fifth Amendment and the Utah Long Arm Statute, Utah Code Ann. § 78B-3-201 et seq., due at least to ADT's transaction of business within the state of Utah and its substantial business in this Judicial District, including: (a) at least a portion of the acts of infringement alleged herein and (b) regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to individuals and entities in the state of Utah and in this Judicial District.

8.      ADT conducts regular business in the state of Utah by, at the least, selling, installing, and servicing smart home security systems in Utah.

9.      On information and belief, ADT maintains and employs regular employees in Utah.

10.      ADT's website advertises the ADT Office in West Valley, Utah. *See* https://www.adt.com/local/ut (last accessed February 25, 2021).

11.      ADT's website advertises open employment positions for locations in West Valley, Utah, including those shown below:

*See* https://jobs.adt.com/search-jobs/Salt%20Lake%20City%2C%20UT/29/4/6252001-5549030-5781004-5780993/40x76078/-111x89105/50/2 (last accessed February 25, 2021).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because: (a) ADT has a physical place of business in this Judicial District; namely, the ADT Office; (b) the ADT Office is a regular and established place of business staffed with ADT employees who regularly conduct business at the ADT Office; (c) the ADT Office is owned and exclusively controlled by ADT and is not solely a place of work of an ADT employee; (d) ADT sells and supports infringing products, systems, and services within this Judicial District; and (e) ADT has specifically targeted Utah residents with advertising and offers to sell ADT's smart home security systems, including those it has branded as "ADT

4

Pulse" ("Pulse"), "ADT Control" ("Control"), and "Blue by ADT" ("Blue") [collectively, the "Accused Systems"].

## FACTUAL BACKGROUND

### Vivint's background and products and services

13.    With its roots in Provo, Utah, Vivint has steadily grown over the past 20 years to become a leading smart home technology provider in North America. In renaming the company as it blossomed, Vivint took "Viv" from the Latin verb vivere (which means "to live") and paired it with "int" from the word "intelligent." Putting the two together created the simple phrase that is foundational to all Vivint strives to help its customers do: live intelligently.

14.    Vivint developed and launched its own proprietary platform to service its smart home security customers, providing a fully integrated smart home security platform.

15.    As one of the premier providers of smart home technology, Vivint is recognized throughout the industry (of which it was a leader in creating) for its products, innovation, and customer satisfaction. It focuses on creating simple, safe, affordable smart homes. Vivint's offerings include:

- vertically integrated smart home security systems;

- in-home consultation;

- professional installation; and

- 24/7 monitoring and customer support.

16.    Vivint's products include:

- wireless security cameras;

- smart security devices, such as smart locks and garage door openers;

- automated lighting control and smart thermostats;

- doorbell video cameras; and

- smart security intrusion sensors.

17.    With over 10,000 employees dedicated to redefining the home experience with intelligent products and services, Vivint serves more than 1.7 million customers throughout the United States and Canada.

18.    Key to Vivint's success has been its commitment to creating, inventing, and innovating. Indeed, to encourage and develop innovation, Vivint has its own Innovation Center in Lehi, Utah and Development Center in Boston, Massachusetts. Vivint now owns more than 300 issued patents.

**Vivint's Asserted Patents in this case**

19.    Vivint's technological innovations are protected by, *inter alia*, a large portfolio of intellectual property, including the following six (6) patents

(collectively, the "Asserted Patents") that were duly issued by the United States Patent and Trademark Office and are presumed by law to be valid and enforceable (35 U.S.C. § 282):

    a.  United States Patent No. 10,325,159 (the "'159 patent"), titled "Entity detection." A true and correct copy of the '159 patent is attached hereto as Exhibit 1 and incorporated herein by this reference.

    b.  United States Patent No. 10,228,151 (the "'151 patent"), titled "Floating thermostat plate." A true and correct copy of the '151 patent is attached hereto as Exhibit 2 and incorporated herein by this reference.

    c.  United States Patent No. 9,349,262 (the "'262 patent"), titled "Security system providing a localized humanly-perceivable alert for identifying a facility to emergency personnel." A true and correct copy of the '262 patent is attached hereto as Exhibit 3 and incorporated herein by this reference.

    d.  United States Patent No. 7,956,739 (the "'739 patent"), titled "Monitoring and entry system presence service." A true and correct

copy of the '739 patent is attached hereto as Exhibit 4 and incorporated herein by this reference.

e. United States Patent No. 8,700,769 (the "'769 patent"), titled "System and method for providing configurable security monitoring utilizing an integrated information system." A true and correct copy of the '769 patent is attached hereto as Exhibit 5 and incorporated herein by this reference.

f. United States Patent No. 8,392,552 (the "'552 patent"), titled "System and method for providing configurable security monitoring utilizing an integrated information system." A true and correct copy of the '552 patent is attached hereto as Exhibit 6 and incorporated herein by this reference.

20.    Vivint is the owner by assignment of the Asserted Patents and holds all rights, title, and interest in and to the Asserted Patents, including the right to sue and recover for all past, present, and future infringements. Vivint has not authorized, licensed, or otherwise given permission for ADT to use any of the Asserted Patents or to make, use, offer for sale, or sell any product or service that infringes any claim of any of the Asserted Patents.

21.     Vivint and ADT directly compete for customers for the sale of smart home security systems.

**ADT's infringing products and services**

22.     ADT has sold and continues to offer for sale its Pulse and Control smart home security systems. Both systems are sold with a number of smart home security devices, including cameras, video doorbells, thermostats, lights, door locks, garage door controllers, security panels, plugs, outlets, switches, motion sensors, door sensors, door locks, and others. Both systems allow customers to manage smart home devices through ADT's website under either the Pulse or Control logins. Alternatively, ADT allows users to manage their systems through their Pulse or Control smart phone applications. Customers (through ADT's website or smart phone applications) can set automation and notification rules for various functions of the smart home system, including among others: automatic arming; automated light control; automated lights in response to alarm events; notification of a doorbell event; and others.

23.     ADT also has sold and continues to offer for sale Blue as a do-it-yourself smart home security system. ADT sells a number of devices with Blue, including at least cameras, video doorbells, motion sensors, door sensors, and window sensors. *See generally* https://www.bluebyadt.com/ (last accessed

February 25, 2021). Blue allows customers to configure the security system with various automation and notification rules for devices, including: automated lights based on an alarm event; notifications that a camera or video doorbell has recognized a particular user; and others. Blue allows for integration with other smart home devices that can be controlled through the Blue smart phone application or website interface. ADT's website describes how Blue can integrate with a number of devices as depicted below in this screenshot from ADT's Blue website (*id.*):



24.     ADT's smart home security systems, including, at least, the Accused Systems, infringe one or more claims of each of the Asserted Patents.

25.     Vivint has lost sales as a result of ADT's infringement.

26.     On information and belief, ADT has had knowledge of the Asserted Patents since at least the date of the filing of this Complaint.

27.     Vivint is entitled, under at least 35 U.S.C. § 284, to recover damages from ADT in an amount adequate to compensate for its acts of infringement, including Vivint's lost profits, but in no event less than a reasonable royalty for ADT's acts of infringements, together with interest and costs as fixed by the Court.

28.     The Court may increase the damages under 35 U.S.C. § 284 up to three times the amount found or assessed, and Vivint is entitled to such an enhancement because ADT's infringement of the Asserted Patents has been willful, intentional, and knowing since at least the filing of this Complaint.

29.     ADT's willful infringement of the Asserted Patents renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

30.     Vivint has satisfied the statutory requirements to collect pre-suit damages for infringement of each of the Asserted Patents, including, without limitation, any applicable provisions of 35 U.S.C. § 287, by, at least, listing the Asserted Patents at https://www.vivint.com/legal/patents.

## FIRST CLAIM FOR RELIEF
### (Infringement of the '159 patent)

31.     By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

32.     ADT has directly infringed, and continues to infringe, one or more claims (including, at least, claim 9) of the '159 patent (see Exhibit 1 attached hereto), in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale the Accused Systems (including, at least, Blue) within the United States during the term of the '159 patent.

33.     One or more of the Accused Systems (including Blue, at the least) is capable of performing and actually performs each limitation of one or more claims (including, at least, claim 9) of the '159 patent as explained in the further detail below.

34.     Blue, at least, includes cameras and video doorbells with facial recognition features. The cameras and video doorbells include a processor and memory in electronic communication with the processor. The cameras and video doorbells include firmware which, when executed by the processor, cause the cameras and video doorbells to perform several functions.

35.     The cameras and video doorbells capture camera data within the field of view of the cameras or video doorbells. The cameras and video doorbells detect facial features of humans from the camera data.

36.     Blue includes a facial recognition library that stores photos of users. An example of such facial recognition library from Blue's user interface is depicted in the screenshot below:



37.     Blue along with its associated cameras and video doorbells compare and match the facial features of users stored in the database to the camera data.

38.     Upon recognizing the user's face, Blue, at least, generates and delivers a notification to a user's device, such as a smartphone, that a specific user has been recognized by the Blue system.

39.     Due to its capability of at least the Blue system performing and actually performing the functions described herein, ADT directly infringes one or more claims (including, at least, claim 9) of the '159 patent.

## SECOND CLAIM FOR RELIEF
### (Infringement of the '151 patent)

40.     By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

41.     On information and belief, ADT sells at least two smart thermostats, the "T2000" and the "T3000" thermostats (collectively, the "Thermostats") depicted below:



**T2000**                    **T3000**

42.     On information and belief, a third-party entity, Alarm.com Inc., supplies ADT with the Thermostats.

43.     ADT has directly infringed, and continues to infringe, one or more claims (including, at least, claim 7) of the '151 patent (see Exhibit 2 attached hereto) in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale the Thermostats within the United States during the term of the '151 patent.

44.     The accused Thermostats are capable of performing and actually perform each limitation of one or more claims (including, at least, claim 7) of the '151 patent. For example, without limitation, each of the Thermostats includes at least a base that is wall mountable in a fixed position relative to the wall as depicted in the figures below:



**T2000 (left) and T3000 (right)**

*See* https://www.adt.com/smart-thermostat (last accessed February 25, 2021); https://www.youtube.com/watch?v=m9YgujQ0ogs (last accessed February 25, 2021).

45.     The Thermostats include at least a housing coupled with the base, and include a display coupled with a controller positioned in the base. The images below taken of products depict the internal configurations of the Thermostats:

 

**T2000 (left) and T3000 (right)**

46.     The housing of each of the Thermostats is configured to move relative to the base when the housing is pressed.

47.     Sensors in the Thermostats detect when the housing is moved after being depressed. The sensors initiate a thermostat adjustment when detecting that the outer housing has been pressed. Depicted in the images taken from actual products below include at least sensors that detect the movement of the housing when the housing is pressed:

 

**T2000 (left) and T3000 (right)**

48.　Due to the Thermostats' capability of performing and actually performing the functions described herein, ADT directly infringes, one or more claims (including, at least, claim 7) of the '151 patent.

**THIRD CLAIM FOR RELIEF**

**(Infringement of the '262 patent)**

49.　By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

50.　ADT has directly infringed, and continues to infringe, one or more claims (including, at least, claim 1) of the '262 patent (see Exhibit 3 attached hereto) in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale, at least, the infringing Accused Systems within the United States during the term of the '262 patent.

51.     For example, at least the accused Control system is capable of performing and actually performs each limitation of one or more claims (including, at least, claim 1) of the '262 patent. For example, and without limitation, Control includes sensors in locations configured to generate an alarm condition message in response to an alarm condition.

52.     Control includes a panel communicatively coupled to sensors and other devices at the premises. If the panel is in an armed state, sensors and devices may detect an alarm event at the location of that sensor or device.

53.     Upon detection of an alarm event, the panel sends a message with the alarm condition to a remote server or backend that is accessible through ADT's website or the Control smart phone application.

54.     Following the alarm event, ADT will contact users to confirm alarm events. ADT will also provide the user with a notification of the alarm event that can be canceled or verified by the user. *See* https://answers.alarm.com/Subscriber/Website_and_App/System_Management/System_Usage/Cancel_or_Verify_Alarms_using_the_app. An example from ADT's online knowledge base is depicted below:



55.     The user may set up a rule to turn on a specific light at the premises

that is integrated with Control upon detecting an alarm condition. Upon detection

of the alarm condition, the backend will send a command to the panel to run the

specific rule and the panel will execute the specific rule. The screenshot from the

user interface below depicts one example of how Control allows users to configure

their system to turn on a light in response to an alarm condition from a sensor:



56.     On information and belief, Control may receive a phone call or other

notification indicating the dispatch of emergency personnel to the premises from

the backend. On information and belief, Control notifies the user of the dispatch of emergency personnel to the premises.

57.     On information and belief, the Accused Systems (including, at least, Control) infringes one or more claims (including, at least, claim 1) of the '262 patent in a substantially similar manner as described herein.

58.     Due to the capability of the Accused Systems (including, at least, Control) of performing and actually performing the functions described herein, ADT directly infringes one or more claims (including, at least, claim 1) of the '262 patent.

## FOURTH CLAIM FOR RELIEF
### (Infringement of the '739 patent)

59.     By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

60.     ADT has directly infringed, and continues to infringe, one or more claims (including, at least, claim 8) of the '739 patent (see Exhibit 4 attached hereto) in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale the infringing Accused Systems within the United States during the term of the '739 patent.

61.     For example, at least the accused Control system is capable of
performing and actually performs each limitation of one or more claims (including,
at least, claim 8) of the '739 patent.

62.     For example, and without limitation, Control includes a video
doorbell. When a visitor pushes the doorbell button on the video doorbell or when
the video doorbell detects motion, the video doorbell sends a notification to a user
via the user's mobile device operating the Control smart phone application.

63.     On information and belief, Control determines a user's location. In
one example, location data may be used in order to send notifications to customers'
devices. In other examples, Control may determine the user's location relative to a
pre-defined geo-fence. The screenshot from the user interface below depicts the
option to filter video doorbell notifications based on the location of a specific user:



64.     Control, at least, provides users with notifications associated with devices, for example, when a button is pushed on the video doorbell Control sends a push notification or message to the user via the user's mobile device to notify the user that Control has detected the doorbell button being pushed.

65.     The user may activate the smart phone application upon interacting with the push notification or message sent to the user via the user's mobile device.

66.     On information and belief, the Accused Systems (including, at least, Control) infringe one or more claims (including, at least, claim 8) of the '739 patent in a substantially similar manner as described herein.

67.     Due to at least to the capability of the Accused Systems (including, at least, Control) of performing and actually performing the functions described herein, ADT, directly infringes one or more claims (including, at least, claim 8) of the '739 patent.

### FIFTH CLAIM FOR RELIEF
### (Infringement of the '769 patent)

68.     By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

69.     ADT has directly infringed, and continues to infringe, one or more claims, (including, at least, claim 13) of the '769 patent (see Exhibit 5 attached

hereto) in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale, at least, the infringing Accused Systems within the United States during the term of the '769 patent.

70.     The Accused Systems are capable of performing and actually perform each limitation of one or more claims (including, at least, claim 13) of the '769 patent. For example, and without limitation, the Accused Systems are sold with a number of compatible devices that integrate with each respective system. Devices include, without limitation, smart lights, locks, plugs, switches, outlets, cameras, motion sensors, door sensors, window sensors, thermostats, garage door controllers, and others. Each device sends information regarding its status to the Accused Systems.

71.     The Accused Systems include, at least, data sources that are capable of independent action as well as data sources that are not capable of independent action.

72.     The Accused Systems receive data from the devices connected to the system. The device data is categorized based on the source of the data. For example, the image below from Control's user interface depicts at least one example of the system's ability to categorize data based on the data source:



**Device history for Control**

73.     The Accused Systems are configured so that users may define rules within the system including at least asset, resource, or device rules. The defined rules may be based on data from specified device sources. The image below depicts an example from Control's user interface allowing users to define rules for the system:



**Example rule configuration for Control**

74.     Users can create rules based on at least data from sources capable of independent action; sources not capable of independent action; and from event data.

75.     Examples of rules that users can configure in the Accused Systems include at least automating a door lock to lock when the system is armed; automating a light to turn on when a motion sensor is triggered; and arming the system every night at 10 p.m.

76.     On information and belief, the Accused Systems process the categorized device source data according to the defined rules for each system.

77.     On information and belief, the Accused Systems will determine if the data is outside of the defined parameters of the rule.

78.     On information and belief, the Accused Systems infringe one or more claims (including, at least, claim 13) of the '769 patent in a substantially similar manner as described herein.

79.     Due to the Accused Systems' capability of performing and actually performing the functions described herein, ADT directly infringes one or more claims (including, at least, claim 13) of the '769 patent.

## SIXTH CLAIM FOR RELIEF
### (Infringement of the '552 patent)

80.     By this reference Vivint realleges and incorporates the foregoing paragraphs 1–30 as though fully set forth here.

81.     ADT has directly infringed, and continues to infringe, one or more claims (including, at least, claim 11) of the '552 patent (see Exhibit 6 attached hereto) in violation of 35 U.S.C. § 271(a) by, at least, importing, selling, or offering for sale the infringing Accused Systems within the United States during the term of the '552 patent.

82.     The Accused Systems are capable of performing and actually perform each limitation of one or more claims (including, at least, claim 11) of the '552 patent.

83.     For example, and without limitation, the Accused Systems are sold with a number of compatible devices that integrate with each respective system. Those devices include, without limitation, smart lights, locks, plugs, switches, outlets, cameras, motion sensors, door sensors, window sensors, thermostats, garage door controllers, and others. Each device may send information regarding its status to the Accused System.

84.     The Accused Systems include, at least, data sources that are capable of independent action as well as data sources that are not capable of independent action.

85.     The Accused Systems receive device data from the devices connected to the system. The device data is categorized based on the source of the data. For

example, the image below from Control's user interface depicts at least one

example of the system's ability to categorize data based on the data source:



**Device history for Control**

86.    Users of the Accused Systems may define a number of rules including

at least asset, resource, or device rules. The defined rules may be based on data

from devices and sensors and may be based, at least, on asset data, resource data,

and event data. The image below depicts an example from Control's user interface

allowing users to define rules for the system:



**Example rule configuration for Control**

87.     Examples of rules that users can configure in the Accused Systems include at least automating a door lock to lock when the system is armed; automating a light to turn on when a motion sensor is triggered; and arming the system every night at 10 p.m.

88.     On information and belief, the Accused Systems process the categorized device source data according to the defined rules for each system.

89.     On information and belief, the Accused Systems will determine if the data is outside of the defined parameters of the rule.

90.     On information and belief, the Accused Systems infringe one or more claims (including, at least, claim 11) of the '552 patent in a substantially similar manner as described herein.

91.     Due to the Accused Systems' capability of performing and actually performing the functions described in herein, ADT directly infringes one or more claims (including, at least, claim 11) of the '552 patent.

## PRAYER FOR RELIEF

Vivint prays that the Court grant it relief by entering a judgment in Vivint's favor on each of its claims for relief, and specifically:

A.     find ADT liable for infringement of the claims of the Asserted Patents;

B.   award Vivint damages adequate to compensate it for ADT's infringement of the Asserted Patents, pursuant to 35 U.S.C. § 284;

C.   find that ADT's infringement of the Asserted Patents was willful and, pursuant to 35 U.S.C. § 284, increase the damages up to three times the amount found or assessed because of, at least, ADT's willful conduct;

D.   find this case to be exceptional under 35 U.S.C. § 285 and award Vivint its reasonable attorney fees accordingly;

E.   award Vivint pre-judgment and post-judgment interest;

F.   tax Vivint's costs to ADT; and

G.   award Vivint such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Vivint hereby requests a trial by jury of all issues properly triable by jury.

Dated: February 25, 2021

Respectfully submitted,

*/s/ Sterling A. Brennan*

David R. Wright
Sterling A. Brennan
Kirk R. Harris
Michael A. Manookin
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC

_____
Attorneys for Plaintiff Vivint, Inc.